Did you wish to reserve time for rebuttal? I do, Judge Beatty. Three minutes, please. Oh, I'm sorry, Mr. Tai. All right. So, all right. All right. Please go ahead whenever you're ready. Good afternoon, and may it please the court. Patrick Tai on behalf of the petitioner, Miriam Rojas Alvarado. The court should grant Miriam's petition in remand to the Bureau of Appeals because the immigration judge rendered an adverse credibility determination about Miriam that is not supported by substantial evidence. The government, in its answering brief, does not contest that the immigration judge failed to render a legally sufficient credibility determination, but instead the government argues that this lack of jurisdiction to review this petition. The government is wrong, and the court should reject it for two reasons. First, this court has long held that review of an agency's finding of facts is supported for substantial evidence is a question of law. It is not a question of fact. And in seeing this court recognize the immigration judge's credibility determinations are a fact that are reviewed for substantial evidence. So, the question of whether or not credibility determination is a question of law. Secondly, the government also argues that this court lacks jurisdiction to review the immigration judge's adverse credibility determination because the IJ ultimately rendered a decision based on discretion. And again, the government is wrong. And I point to a case that is cited on page 13 of the reply brief. It's an unpublished memorandum decision, but Judge Tomas on that panel. And in that case, it dealt with the same procedural posture as this case here. The petitioner applied for cancellation of removal under section 1229B. The immigration judge found that the petitioner applied for cancellation of removal. Can you get closer to the microphone? Perhaps you're kind of going in and out. Yes. Yeah. Hold on one second. I'll maybe try to move this a little bit closer. Is that better? That is better. All right. I apologize too. I'll speak more to the microphone than to the camera lens. But in Artegia Godinez, the immigration judge found that the petitioner satisfied all the statutory elements required for cancellation of removal, but denied relief as a matter of discretion. And the court then proceeded. It noted that while it lacked jurisdiction to review the discretionary determination, it had jurisdiction to review questions of law. And it proceeded to assess whether or not the immigration judge's adverse credibility determination was supported by Go ahead. Yes. Yeah. So I'd like to take you to the question of substantial evidence. The immigration judge found two grounds for finding your client not credible. I'd like to go to the second of those. He said that she denied knowledge of marijuana when testifying before this court, and that is inconsistent with her acknowledgement before the U.S. magistrate trial judge that she knowingly possessed the marijuana. Now, why isn't there substantial evidence to support that when she has signed an official court document acknowledging that she knowingly, that she knowingly drove the car knowing that there was marijuana in the spare tire? Why is that? I think it stems from the Ninth Circuit precedent about how the immigration judge has to go about stating specific and cogent reasons. And this court in Strestha and its other cases interpreting Section 1229A has noted that the immigration judge has to address the petitioner's explanations for any perceived inconsistencies. Well, what's here? Okay, counsel. So what's her explanation for having signed something in court to admit that she possessed marijuana? I didn't see an explanation. I read her testimony yesterday. I didn't see an explanation that would counter an acknowledgement on an official court document. Well, I think her explanation has set forth. She explained that before the BIA that she didn't know that she she didn't think it was possible to plead to unknowingly possessing marijuana. And she set forth a reason that her ex-husband planted the drugs in her car and she corroborated that with testimony from her mother. Okay, so counsel, that seems different. I mean, one explanation, her explanation for the whole incident was that her ex-husband was responsible for this and he maliciously planted the marijuana in the tire. But the issue that Judge Bybee's addressed goes to something different, which is the guilty plea, signing the plea agreement under oath and then swearing in open court to that factual basis, which is inconsistent with her You cited her explanation before the BIA. The BIA declined to consider something that had not been presented to the immigration judge. I didn't see anywhere before the immigration judge where she gave any explanation about why she entered that guilty plea if she didn't know that there was marijuana in the tire in the trunk. And I don't think it cuts it to do it for the first time before the BIA. Then she's got a waiver problem. She needs to raise it before the IJ. So how do you get around that? Why is there not substantial evidence in these circumstances? So as I noted in the opening brief, that there's also an obligation under Ninth Circuit precedent that the immigration judge has to ask about the perceived inconsistencies. And I note there that the immigration judge and perhaps I'm maybe misremembering, but it was very few questions, I think around eight that he asked in total about from the petitioner, Miriam, and didn't inquire about that specific inconsistency. And it's improper, as the Ninth Circuit has noted, to rely on an inconsistency that the immigration judge did not inquire about. And the immigration judge... I have the same concern that my two colleagues have, but let me come at it this way. Even if the immigration judge had directly asked her, can you explain why you testified under oath in the testimony today that you didn't know? Both of those statements cannot be true because they are diametrically opposed. What possible explanation could she have to explain away that inconsistency? Well, I think again, it's referring back to her statement that, you know, and she talked about this with her four children and being in this vulnerable position, needing to get out and plead. But she had an explanation. Is that implicitly acknowledging that she lied under oath before the United States District Court? In which case, why can't the immigration judge find that based on that prior lie under oath, she's not credible? Well, it's not that the immigration judge can't find that, it's that he didn't explain his reasoning as to how he reached that conclusion. And that's what's in contravention of Ninth Circuit precedent and the Real ID Act. But what more does he need to say? I mean, the record is clear that she testified inconsistently in those two proceedings. I mean, your argument is essentially a pure technical due process concern that he did not directly confront her with the inconsistency and ask her for the explanation, which you just gave us. But my reaction to all of that is, so what? She still lied on one of the two occasions where she swore to tell the truth. And doesn't that provide substantial evidence to support an adverse credibility determination? Well, I think, Judge Hellman, to go to your question of as to so what, the substantial evidence review gives substantial deference to the immigration judge. But in return for that, we require that the immigration judge go about doing certain things in a certain way so as not to insulate his or her opinion from judicial review. And that's the problem here, that the Ninth Circuit has clearly set forth these standards and the immigration judge did not follow them when rendering this credibility determination. What more do I need to review here in order to conclude that there was substantial evidence? As I understand the substantial evidence test, we look at the record and if we conclude that no reasonable fact finder could have made that finding and therefore the record compels the opposite conclusion, how can I say that where she lied on at least one of those two occasions? Well, again, it's going back to, I think, the process in which the immigration judge reached the decision and the reasons that were stated and what explanations were proffered by immigration judge. I would like to reserve the remaining 30 seconds if I could. Well, counsel, Judge Fodby wanted to ask you a question and so I don't want to cut him off, but we'll give you a little extra time. Judge Fodby, did you have a question? I'm just curious, if we sent this back, counsel, following up on Judge Tallman's sort of fork in the road problem is she's end played. It doesn't matter if we send this back. She cannot. There is no circumstance under which she can offer a plausible explanation and the IJ identified the problem. He said that she testified contrary to her sworn statement. There isn't any possible explanation that she can offer if we send this back that's going to help her. And again, I think it's going back to and perhaps maybe I'm just seeing it differently, but in terms of the proffered explanation from both her mother and from herself as to why they ended up there and the circumstances that led to why she pled guilty. I do think that the Ninth Circuit precedent requires the immigration judge address. However, that may have affected the ultimate sort of decision regarding her credibility. Thank you. Ms. Welhoff? Ms. Welhoff, I hit star six down yourself. Ms. Welhoff, can you hear us? I'll try to give her a call, judge. Okay. Thank you, Connie. A telephone participant who just came in. Is that Ms. Welhoff? No, this is Micah Engler from the Department of Justice. Okay. Thank you. We're on that case before yours, so please hold. Okay. Judge, it looks like we lost Ms. Welhoff. I'll try to reach her again. Okay. Thank you. Ms. Welhoff, is that you who just connected? Yes, it is. My apologies. I don't know. I have no idea what just happened because I was connected the entire time, and I could hear all of you, and I wasn't on mute, so I apologize. We have you now. You can hear us okay? I can. Can you hear me? Yes, we can. Can you see the clock, or do you need us to give you a little warning? You can give me a warning. That would be great. Thank you. Okay. I'll give you a two-minute warning and maybe a one-minute warning to see how it's going. Whenever you're ready to proceed, please go ahead. And again, Ann Welhoff here for Respondent. Will you bar the Attorney General? May she support? I want you to know, Ms. Nielsen, that there's almost credibility to termination. Ms. Welhoff? It's a red herring. Excuse me, Ms. Welhoff? Can you hear me? Yes. You're really garbled. You were fine at first, and then as soon as you started your argument, I don't know if you moved away from the phone or what happened, but it got very garbled. One moment. Is this better? Yes. Okay. I'm sorry. To begin again, the adverse credibility notation in this case is little more than a red herring. What we have in this case is the agency engaging in a discretionary analysis and a weighing of the positive and negative factors in this case that would weigh in the discretionary analysis. And it doesn't matter. It simply doesn't matter whether the immigration judge found petitioner to be truthful or not about whether she knew that drugs were in the car. We have established facts upon which the immigration judge and the board place their reliance in declining to exercise a favorable discretion. Counsel, Judge Tallman here. I'm not sure I agree with your analysis. It seems to me that under Ninth Circuit authority, before the immigration judge can establish the fact, the immigration judge, if he or she is relying on inconsistent statements, must confront the court and render a factual determination as to whether the petitioner is offering truthful testimony on which the discretionary decision is then made. And if I understand petitioner's challenge here, it is a due process challenge to the way in which the immigration judge conducted the proceeding before rendering the discretionary call on whether or not to grant the relief requested. I think that you're correct that he tries to couch it as a due process claim because that's the only potential way that you can even get into the substantial evidence question. And you're also correct about Ninth Circuit law, but what that requirement kicks in when what the immigration judge has before him is inconsistent testimony. That's not what we have here. We have established facts. We have her admissions. If you go to, she admitted all the factual allegations in the notice to appear and admitted the removal charge. If you were just reading the facts, these are established facts. This isn't testimony from her. She went in and admitted it. He doesn't have to then, the case law doesn't say at that point, he has to go and ask, why are you, I mean, it doesn't even make sense. It just doesn't apply. She admitted that at the time she attempted to bring a controlled substance into the United States, it was approximately 10 kilograms of marijuana. That's a factual allegation she admitted. She admitted that she's an alien, she's a consular officer, knew her reason to believe, had been a trafficker in illicit drugs and controlled substances. She admitted that looking at another allegation that she had. These are all established facts. And the case law simply doesn't, it just doesn't apply to this scenario, what we have here. So counsel, is there, under these circumstances, is there any way she could have qualified for a cancellation of removal? Well, what's the point of this process then? Well, if the, if in fact the immigration judge had, we've had cases where they have been convicted of crimes, but, and they've still gotten it. The immigration judge has engaged in the discretionary weighing of factors and has held for the alien. In this case, what they said was that the negative factors out the adverse factors in the discretionary calculus. And most importantly, her criminal conviction, which is an established fact, she admitted her concession of removability as a person, the attorney general knows, or has reason to believe is a controlled substance trafficker that she readily admitted and her agreement to cooperate in a scheme to transfer the money. She, the one thing she does at least admit is that, yeah, she knew about the money. And those are the, if you look at the board's decision, he's not highlighting, the board didn't even need to make that one sentence statement that he agreed with the IJ, that she wasn't credible on that point, because the board didn't really even rely on that. The board clearly relied on established facts as negative factors and weighed those and said those outweigh any positive factors in this case. And both the immigration judge's decision and the, and the board show there was a very thorough weighing of the factors in this case. It certainly can't be said that, that the agency did not engage in that analysis. It's required legally, it did so. And that analysis is insulated from this court's review, unless there's a legal problem and there simply isn't here. Ms. Welha, can you reconcile the ambiguity in the immigration judge's ruling with regard to the mother, is it Sylvia or Miriam? I can't remember which is which, but in any event, the mother's testimony, the IJ seems to say, I believe the mother, but then drops the footnote and says, except with regard to, you know, what the daughter knew about the drugs in the car. Do you understand my concern? I do. And I read that and thought, well, either you believe her or you don't. But first of all, again, I want to emphasize that the adverse cred, this case doesn't rise and fall on this, this case rise and falls on the weighing of adverse factors, which are established facts. This case, the adverse cred really, I would respond as your honor did and say, so what? I don't believe that it has any bearing on the negative factors, which are established facts that clearly outweigh the positive. But as to your point, yes, I think it was, it was the immigration judge did say he believed her, but he found that to the extent she was testifying about the children's problems and the children, he found that credible and waited in the positive analysis. But he, again, faced with established facts of what this, what crime occurred and what, what elements of the crime were. And the fact that the person admitted all of those, he found her testimony questionable as well, when it came to trying to distance her daughter from, again, the facts that were already established in this record that she knew it was marijuana by saying her husband did it and whatnot. The immigration judge wasn't buying it from the, from the petitioner and he wasn't buying it from the petitioner's mother. And I, I think that he made that clear, but that is not two minutes. I'm sorry, I don't want to interrupt you, but you're almost at a minute 30 now. So, so again, I would, I would emphasize that it just doesn't matter that we have established facts here. There isn't case. She admitted the factual allegations and the removal charges. We have the record of conviction, which, which clearly speaks, which is established. And I, there are cases that say, you know, that the immigration judge is supposed to inquire about discrepancies and testimony, but that that's not what went on here. We had someone come in and testify completely contrary to her own admissions and established facts. And that's, that's simply not the analysis here. And again, I would emphasize to the extent that court thinks that the judge should have said, oh, okay, why are you testifying that you didn't do it when all the records, then you just admitted you did it. It's harmless error, even if you want to call it an error, which I do not call it an error on these facts, but even if the court were to find that judge should have asked her that question, which. Objectively seems like a very ridiculous question. I think it would have been a harmless error to not make that question. So that would be, that would be the, that would be the second prong of the due process analysis. Would it not, even if the IJ aired in the way that he, he failed to confront the witness, nonetheless, there was no prejudice. There definitely was not. I don't believe it was there for the reasons stated, but yes, you're correct. There's clearly no prejudice. And I would emphasize the paragraphs on page three of the record, where the board highlights the reasons that the negative equities, none of them have to do with what petitioner stated. They're just, they have to do with the established facts of this case and her admissions, not her testimony about whether her husband planted something. Doesn't matter. All right. Thank you, your honor. Thank you. Mr. Tai, I will, I'll give you two minutes for rebuttals. Thank you. And I'll, and I just have one point to make. The government, I think repeatedly kept noting, why does it matter? And so what, and the government did not raise many of these arguments about harmlessness and its briefing. It simply did not address that, but just argued that the court lacked jurisdiction. And I, and I think the salient point here is, is the ninth circuit president has been very clear about what an immigration judge must do when he or she is going to rely on inconsistencies within the record. And there is one here, an immigration judge failed to do that. I have nothing further. All right. Thank you. Thank you.
judges: Tallman, Bybee, Bade